## WYNN v. HILLMAN.
### No. 4690.

Court of Appeal of Louisiana. Second Circuit.

March 29, 1934.

See, also, 147 So. 549.

Barksdale, Warren & Barksdale, of Ruston, for appellant.

Scarborough & Barham, of Ruston, for appellee.

MILLS, Judge.

The facts and the findings of the trial judge are clearly and cogently stated in his written opinion, which we quote in full:

"Plaintiff alleges that he made arrangements to enter a formal lease contract with one Dick Lewis covering a part of a tract of land owned by plaintiff for a total consideration of $180.00, but that, before the lease contract had been formally executed, defendant, by intimidating and putting said Dick Lewis in fear by the display of firearms, caused said Dick Lewis to refuse to complete said contract and to formally enter into the same. He prays for judgment against defendant in the sum of $180.00, the amount of the consideration for the lease, with legal interest thereon from judicial demand, and for a writ of injunction restraining and enjoining defendant from interfering with his free use and enjoyment of said property.

"The answer is a general denial.

"The issue presented is one of fact only, and that issue is: did defendant, by the use of intimidation and by a display of firearms, cause Dick Lewis to break his lease contract with plaintiff?

"Only three witnesses, namely: plaintiff, defendant and Dick Lewis, testified in the case. Plaintiff and defendant are both college professors and gentlemen of the highest integrity and standing. Dick Lewis is a colored man and an employee of a local hardware store.

"On the point at issue Dick Lewis testified that he entered into an agreement with plaintiff to lease a small tract of land from plaintiff and to pay plaintiff the sum of $180.00 as the rental value of this property. He paid $20.00 of this amount and obligated himself to pay the balance on a later date. He says that defendant forced or requested him to cancel the lease, in that defendant told him that he wanted to see that the lease was cancelled and that it was cancelled in the Leader. He also says that at the time defendant requested him to cancel the lease that defendant had a pistol on the seat or running-board of his car. He says that defendant, in the conversation, made some reference to the pistol, which reference scared witness, and that he then immediately cancelled the lease in the Leader and gave plaintiff notice of that fact.

"The witness says that it was his intention to operate a resort on the lease for the colored folks, one of the main attractions being a swimming pool. He had planned to stage an opening celebration at the swimming pool on June 19th, and had given public notice of that fact to the colored people of the community through the Ruston Leader, the local newspaper.

"Plaintiff testified that he entered into the lease agreement with Lewis, corroborating Lewis on this point. He testified that Lewis broke the agreement by refusing to formally enter into the contract and to pay the consideration, as he had agreed to do. He says that defendant talked to him about the contract and said that he would force the closing of the swimming pool and keep plaintiff from opening it by force and that he didn't need any help. Defendant, according to plaintiff's testimony, made no reference when discussing the matter with plaintiff to any conversation he had had with Dick Lewis, and plaintiff did not hear any of that conversation.

"Defendant testified that the conversation he had with Dick Lewis had reference only to the swimming pool or lease contract. He positively denied making any threats against Lewis or that he caused him to cancel the lease. He admitted having a pistol in his

car at the time he talked to Lewis. He says that he pointed to the pistol, while talking to Lewis in regard to the celebration, but that he did so with the idea in mind of impressing upon said Lewis the fact that if the negroes attending the celebration should get drunk and come to defendant's house, it would be necessary for him to use the gun to protect his home.

"From the foregoing summary of the testimony, it will readily be seen that the only testimony in support of plaintiff's contention that defendant intimidated and forced Dick Lewis to break the lease contract is the testimony of Dick Lewis himself. Lewis claims that defendant, in the conversation between the two, told him that he must cancel the lease contract, while defendant claims that he told Lewis that he must cancel the celebration announced to be held on June 19th. As between the two, I must accept the testimony of defendant. Dick Lewis had given notice of the celebration in the paper, the Leader. Having given notice of the celebration in the paper, I think it was defendant's idea that he should give notice of its cancellation through the same medium, a fact that corroborates defendant's contention that he was insisting on the cancellation of the celebration and not the lease contract. I can see no reason why defendant should want the cancellation of the lease to be advertised in the paper, but there is reason why he should want notice of the cancellation of the celebration given in the paper, that being that those intending to come would see the notice and not come. It was the crowd of colored people near defendant's home that defendant was trying to avoid. That Dick Lewis has an interest in the outcome of this suit, there can be no question. Knowing this party as I do, I could not give weight to his testimony in a matter in which he has a financial interest, unless his testimony have substantial corroboration. His testimony not only lacks such corroboration, but it is contradicted by a witness whose veracity the court cannot question.

"When we eliminate Lewis' testimony, there is none other to support plaintiff's demand. Plaintiff could not and did not testify that defendant caused or forced Lewis to break the lease contract. He knew nothing about the controversy, if it may be termed such, between Lewis and defendant, other than what Lewis told him. If plaintiff could have given testimony that would corroborate the testimony of the witness Lewis, the sit-

uation would be entirely different. As the record stands, plaintiff has failed to prove his demands, and his suit must be dismissed and his demands rejected, with costs."

Counsel for plaintiff and appellant in their brief submit the matter on this issue:

"This is an appeal from what we believe to be an arbitrary disqualification of plaintiff's witness. If the testimony of this witness is considered, plaintiff's suit must prevail, but if it is not considered, plaintiff's suit must fall for lack of proof."

 The rule is well settled that appellate courts are justified in reversing the findings of the lower court on questions of fact or credibility of witnesses only in cases where that finding is manifestly erroneous. We cannot conclude from the record that the action of the lower court in attaching greater weight to the testimony of a college professor, stated by him to be a gentleman of the highest integrity and standing, than that of a colored employee of a hardware store, well known to the judge, and having a financial interest in the outcome of the suit, in that he will receive his $20 back if plaintiff prevails.

On findings of fact, the judgment of the lower court is correct and is affirmed.